Axel ORTIZ TORRES, Plaintiff,

v.

HOSPITAL MATILDE BRENES. INC., et al., Defendant.

Civil No. 02–2249(JAG).

United States District Court, D. Puerto Rico.

March 12, 2003.

Jaime A. Lamboy–Riley, Edif. Arroyo, San Juan, PR, for plaintiff.

Paul M. Vilaro–Nelms, Vilaro Law Offices, San Juan, PR, for defendants.

**OPINION & ORDER**

GARCIA–GREGORY, District Judge.

Plaintiff Axel Ortoz Torres ("Ortiz") filed the instant action on August 14, 2002 alleging that defendants Hospital Matilde Brenes ("Hospital") and Dr. Hector Cruz–Albarran ("Cruz") failed to adequately screen and stabilize his emergency medical condition and improperly discharged him pursuant to the Emergency Medical Treatment and Active Labor Act (EMTALA), 42 U.S.C. §§ 1395dd *et seq.* Pending before the Court is defendants motion to dismiss and memorandum of law in support thereof (Docket No. 4). The motion has been unopposed since October, 2002.

## I. *Motion to Dismiss Standard*

██ Pursuant to Fed.R.Civ.P. 12(b)(6), a complaint may not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See Brown v. Hot, Sexy and Safer Prods., Inc.,* 68 F.3d 525, 530 (1st Cir.1995). The Court accepts all well-pleaded factual allegations as true, and draws all reasonable inferences in favor of plaintiff. *See Correa–Martinez v. Arrillaga Belendez,* 903 F.2d 49, 51 (1st Cir.1990). The Court need not credit, however, "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like" when evaluating the Complaint's allegations. *Aulson v. Blanchard,* 83 F.3d 1, 3 (1st Cir.1996). When opposing a Rule 12(b)(6) motion, "a plaintiff cannot expect a trial court to do his homework for him." *McCoy v. Massachusetts Institute of Tech.,* 950 F.2d 13, 22 (1st Cir.1991). Plaintiff is responsible for putting his best foot forward in an effort to present a legal theory that will support his claim. *Id.,* at 23 (*citing Correa–Martinez,* 903 F.2d at 52). Plaintiff must set forth "factual allegations, either direct or inferential, regarding each material element

necessary to sustain recovery under some actionable theory." *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 514 (1st Cir.1988).

## II. Factual Background

In his complaint, plaintiff alleges that On August 31, 2001, plaintiff cut the palm of his right hand with the knives of a garbage disposal appliance installed in his house sink. He went to the emergency room at Hospital Matilde Brenes, where Dr. Cruz Albarran cleaned his wound and sewed seven stitches. When plaintiff returned to have the stitches removed and he complained about having lost sensation in his hand, Dr. Cruz told him not to worry as this was due to the swelling in the area. Thereafter, another doctor, Dr. Tomas Torres, informed plaintiff that the lack of sensation in his hand was due to a laceration of the median nerve branch.

## III. Discussion

■ EMTALA was enacted in 1986 as a congressional response to the concern that uninsured, underinsured and indigent patients were being "dumped" onto other hospitals by hospitals who did not want to treat them. *See Feighery v. York Hospital*, 59 F.Supp.2d 96, 101–102 *(citing Summers v. Baptist Medical Center Arkadelphia*, 91 F.3d 1132, 1136 (8th Cir.1996)). The Act intended to create a new cause of action, separate from traditional state medical malpractice. Courts have routinely explained that EMTALA is not to be treated as a federal malpractice statute. *See Feighery* 59 F.Supp.2d at 102; *Fuentes Ortiz v. Mennonite General Hospital*, 106 F.Supp.2d 327, 330 (D.P.R.2000).

■ EMTALA has two key provisions: (1) hospitals must provide appropriate screening to emergency room patients and (2) they must provide the services necessary to stabilize the patient's condition before release or transfer. *See Alva-*

*rez–Pumarejo v. Municipality of San Juan*, 972 F.Supp. 86, 87 (D.P.R.1997) *(citing Correa v. Hosp. San Francisco*, 69 F.3d 1184, 1190 (1st Cir.1995)).The Act does not require a hospital to provide a uniform or minimal level of care to every patient seeking emergency care and does not provide a cause of action for misdiagnosis or improper medical treatment. *Feighery*, 59 F.Supp.2d at 102 *(citing Marshall v. East Carroll Parish Hosp.*, 134 F.3d 319, 322 (5th Cir.1998)). These areas are traditionally left to state malpractice laws. The purpose of EMTALA is to bridge the gap not covered by state malpractice laws and to ensure that there be "some screening procedure, and that it be administered even-handedly." *Correa*, 69 F.3d at 1192. "A mere failure to provide medical treatment consistent with generally accepted medical standards is actionable under state tort law." *Torres Otero*, 115 F.Supp.2d at 260; *see also Brooks v. Maryland General Hospital, Inc.*, 996 F.2d 708, 710 (4th Cir.1993).

From the facts alleged in the complaint, it appears that plaintiff received appropriate medical screening and stabilization of his emergency medical condition. The doctor's failure to have recognized the magnitude of the laceration is not a proper EMTALA claim since it does not appear that the doctor failed to follow standard procedure. Because defendants' motion has been unopposed since October, 2002 and because from the facts of the complaint, the court cannot discern a valid EMTALA claim, plaintiff's federal law claims are dismissed with prejudice.

## IV. Conclusion

Accordingly, the Court GRANTS defendants' motion to dismiss (Docket No. 4). The Court dismisses the EMTALA claim with prejudice. T he state law claims are dismissed without prejudice subject to re-

filing in the Commonwealth courts. Judgment shall enter accordingly.

IT IS SO ORDERED.